FILED

```
         IN THE UNITED STATES DISTRICT COURT
             NORTHERN DISTRICT OF ALABAMA
                 NORTHEASTERN DIVISION              00 APR -5

                                                U.S. DISTRICT COURT
                                                  N.D. OF ALABAMA
JERRY TUCKER,                  )

     PLAINTIFF,                )

VS.                            )    CV99-H-1212-NE

DALE ADAMS and SAM BAKER,      )                     ENTERED
     DEFENDANTS.               )                     APR - 6 2000
```

### MEMORANDUM OF DECISION

The Court has before it the February 17, 2000 motion of defendants Dale Adams and Sam Baker for summary judgment. Pursuant to the Court's February 22, 2000 order, the motion was deemed submitted, without oral argument, on March 21, 2000.

### I. Procedural History

Plaintiff Jerry Tucker commenced this action on May 13, 1999 by filing a complaint alleging that the defendants had violated his Fourth and Fourteenth Amendment rights, as protected under 42 U.S.C. § 1983, to be free from unreasonable searches and seizures and that the defendants had committed various state-law torts. (See Compl. ¶¶ 15, 17, 23, 28, 34-35.) Specifically, plaintiff claimed that the defendants, agents of the Alabama Bureau of Investigations ("the ABI"), illegally arrested him because he had



sought to file a complaint against the officers for falsely telling other people that plaintiff was a confidential informant for the ABI. (See Compl. ¶¶ 2-3, 5-9.) The defendants' February 17, 2000 motion for summary judgment simply asserts that no material issues of fact exist and that the defendants are entitled to judgment as a matter of law.

The parties have each filed briefs and submitted evidence in support of their respective positions concerning the pending motion for summary judgment. On February 17, 1999, in addition to filing their motion for summary judgment, defendants also filed a memorandum of law and submitted evidence[1] in support of the motion. Plaintiff submitted evidence[2] in opposition to the

---

[1] Defendants submitted the February 9, 2000 affidavit of Dale Adams; the August 18, 1999 affidavit of Rodney Gordon; the February 9, 2000 police complaint of Shawn Watson; the July 3, 1997 complaint against and arrest warrant for Jerry Tucker; arrest and booking reports for Jerry Tucker; the August 8, 1997 preliminary hearing order in the case of State of Alabama v. Jerry Tucker; the February 13, 1998 indictment of Jerry Tucker; excerpts from the undated deposition of Roger Holt; the July 7, 1997 complaint/violation forms filed by Jerry Tucker against defendants Adams and Baker; excerpts from the October 27, 1999 deposition of Samuel DeWayne Baker; excerpts from the January 14, 2000 deposition of Jay Solomon; excerpts from the December 28, 1999 deposition of Jerry Tucker; the July 8, 1998 motion of the government to dismiss in the case of State of Alabama v. Jerry Tucker; and an October 6, 1997 certificate of analysis.

[2] Plaintiff submitted the October 27, 1999 deposition of Samuel DeWayne Baker; the December 28, 1999 deposition of Jerry

motion and filed an opposing brief on March 17, 2000. Then on March 20, 2000, the defendants filed a reply brief and a supplemental evidentiary submission.[3] The issues having been thoroughly briefed, defendants' motion is now ripe for decision.

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine

---

Tucker; the January 14, 2000 deposition of Jay Solomon; the October 27, 1999 deposition of Dale Adams; the March 8, 2000 affidavit of Jerry Tucker with attached exhibits; the March 7, 2000 affidavit of Rodney Woodall; the March 6, 2000 affidavit of Patrick Moore; the March 6, 2000 affidavit of Bertha Moore; the January 18, 2000 affidavit of Shawn Watson; two February 25, 1997 complaints by Dale Adams against Gary Garth; and the March 7, 2000 affidavit of Marc Sandlin with attached exhibit.

[3] Defendants submitted additional excerpts from the January 14, 2000 deposition of Jay Solomon.

issue of material fact. Id. at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial. Id. at 324.

The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)). If the moving party bears the burden of proof at trial, then it can only

4

meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. <u>Fitzpatrick</u>, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question. This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's

5

claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case. Fitzpatrick, 2 F.3d at 1115-16. If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

### III. Relevant Undisputed Facts

In the early summer of 1997, the ABI was conducting an undercover drug purchase operation in Morgan County, Alabama. (See Adams Aff. 1.) On June 27, 1997, Morgan County Sheriff's Deputies George Rutherford and Howard Battles introduced defendant Dale Adams, an ABI agent involved in the drug purchase operation, to Shawn Watson, a confidential informant for the two deputies. (See Adams Aff. 1.) Watson and the deputies stated that Watson had purchased cocaine in the past from two of the

6

ABI's suspects and was willing to assist the ABI in making controlled buys of cocaine. (See Adams Aff. 1.) As a preliminary matter, Adams showed Watson a photographic array of suspects, including the plaintiff. (See Adams Aff. 1.) Watson identified at least three of the suspects, including plaintiff, and it was explained that only Tommy Nicholas and the plaintiff were current targets. (See Adams Aff. 1; Adams Dep. 12.)

Adams immediately arranged for Watson to participate in a controlled drug purchase. (See Adams Aff. 1.) On the afternoon of June 27, 1997, ABI Agent Jay Solomon and Watson drove to Tommy Nicholas's Decatur home in an attempt to buy illegal drugs. (See Watson Aff. 1; Solomon Dep. 23.) Adams and defendant Sam Baker, another ABI agent, also drove to Nicholas's neighborhood and parked in a concealed location from which they were unable to witness the drug buy. (See Adams Aff. 2; Adams Dep. 13-14.) However, Watson had been outfitted with a body wire, through which Adams and Baker could monitor the purchase, as well as a tape recorder. (See Adams Aff. 2; Adams Dep. 13; Solomon Dep. 22.) When Solomon and Watson arrived, they pulled into Nicholas's driveway and Solomon asked to purchase one hundred dollars' worth of drugs. (See Solomon Dep. 23-24.) Nicholas, a black male, directed Solomon to another black male, who was

walking up the driveway. (See Solomon Dep. 24, 26-27.) Solomon then solicited a purchase of fifty dollars' worth of drugs from the second man and was given a bag, apparently containing crack cocaine. (See Solomon Dep. 28-30.) The second man was given a previously marked one hundred dollar bill; he first turned to make change for Solomon and Watson but after making an exchange with Nicholas then offered to sell one hundred dollars' worth of crack. (See Adams Dep. 13; Solomon Dep. 30, 32-33.) Solomon accepted. (See Solomon Dep. 33.) The second man appeared to make another exchange with Nicholas and returned with a larger bag of what seemed to be crack, which Solomon took in place of the first bag. (See Solomon Dep. 33.) The purchase completed, the ABI agents and Watson left for the Decatur ABI office. (See Solomon Dep. 34; Adams Aff. 2.)

The substance purchased from the two suspects was given to Adams, and field testing revealed it to be cocaine. (See Adams Aff. 2; Adams Dep. 20.) Adams also showed Solomon and Watson the previously viewed photographic array. (See Adams Dep. 14.) Watson identified Nicholas and another suspect; Watson claims that the other suspect was Gary Garth but Adams and Solomon claim that the other person identified by the informant was the plaintiff. (See Adams Aff. 2; Adams Dep. 14; Solomon Dep. 37;

8

Watson Aff. 1.)  Solomon also identified Nicholas and identified the plaintiff, although he was only 80% or 90% certain that the second man was the plaintiff.  (See Adams Aff. 2; Adams Dep. 14; Solomon Dep. 34-37.)

An arrest warrant was issued for Nicholas but could not be executed as Nicholas could not be located.  (See Adams Aff. 2.)  During their search for Nicholas, Adams and Baker visited a Decatur business called New Jack City and spoke with the owner, Rodney Gordon, and several others found playing cards in a back room.  (See Adams Aff. 2-3.)  Adams showed Gordon photographs of Nicholas and his wife and a third picture.  (See Adams Aff. 3; Gordon Aff. 1.)  Gordon avers that the third photograph was of the plaintiff but Adams claims that the photograph was of Gary Garth.  (See Gordon Aff. 1; Adams Aff. 3.)  After the agents left New Jack City, Gordon became upset because he believed that the plaintiff had sent the agents to his store, and he telephoned plaintiff to express his displeasure.  (See Gordon Aff. 2.)

On July 7, 1997, plaintiff appeared at the ABI's Decatur office to file a complaint against Agents Adams and Baker, whom he claimed were spreading false rumors that plaintiff was an ABI informant.  (See Tucker Dep. 64-70.)  Adams was informed of plaintiff's presence and proceeded to arrest him on drug charges

9

stemming from the June 27, 1997 purchase. (See Adams Aff. 3-4.) After posting bond, plaintiff returned to the ABI office to retrieve his van and complete his complaint against the agents. (See Tucker Dep. 77-78.) He claims that the arrest was unfounded and motivated solely by the agent's anger over plaintiff's complaint. (See Tucker Dep. 98.) Defendants have submitted an apparently valid arrest warrant for plaintiff, dated July 3, 1997, four days prior to his arrest; although plaintiff has questioned the authenticity of the warrant, he has admitted that he has no evidence that the warrant was not issued on July 3, 1997. (See Tucker Dep. 98-102.)

### IV. Applicable Substantive Law and Analysis

Plaintiff's primary cause of action arises under 42 U.S.C. § 1983, in that plaintiff alleges that the defendants, acting under color of law, violated his Fourth and Fourteenth Amendments civil rights by illegally arresting and searching the plaintiff in retaliation for his registering a complaints against the defendant agents. (See Compl. ¶¶ 5-10, 15, 17.) Various state law torts, including false imprisonment, invasion of privacy, and intentional infliction of emotional distress, are also alleged. (See Compl. ¶¶ 23, 28, 34-35.) The court first addresses the plaintiff's federal claims.

### 1. Section 1983 Claims

Count One of the plaintiff's complaint asserts 42 U.S.C. § 1983 claims against both defendants. Section 1983 provides for an individual cause of action against "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. Here, the alleged deprivation is of the Fourth Amendment "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures," U.S. Const. amend. IV, as incorporated into the Fourteenth Amendment. See U.S. Const. amend. XIV, § 1. Before reaching the substance of plaintiff's claims, though, the Court must address the defense of qualified immunity, which has been raised by Adams and Baker.

Under the doctrine of qualified immunity, those "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The

11

government actors' subjective good faith beliefs are irrelevant to an analysis of qualified immunity; rather, the test is one of objective reasonableness. See Courson v. McMillian, 939 F.2d 1479, 1487 (11th Cir. 1991). Courts "look to whether a reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred." Hardin v. Hayes, 957 F.2d 845, 848 (11th Cir. 1992) (footnote omitted). In that way, "qualified immunity [provides] protection to 'all but the plainly incompetent or those who knowingly violate the law.'" Courson, 939 F.2d at 1487 (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

Police and other law enforcement officers, such as defendants, are government actors entitled to wield the shield of qualified immunity. See, e.g., Wood v. City of Lakeland, 203 F.3d 1288, 1292 (11th Cir. 2000) (awarding qualified immunity to defendant police officer); Jones v. Cannon, 174 F.3d 1271, 1286 (11th Cir. 1999) (stating that "a police officer is entitled to qualified immunity when performing discretionary functions unless the officer has violated a clearly established right of which a reasonable officer would have known"); Redd v. City of Enterprise, 140 F.3d 1378, 1382-83 (11th Cir. 1998) (finding

police officers entitled to qualified immunity against false arrest claim where the challenged arrest was supported by probable cause). Therefore, the defendants' qualified immunity defense may be analyzed under the two-pronged test established by the Eleventh Circuit. First, the officer claiming qualified immunity must establish that he or she was exercising his or her discretionary authority when committing the allegedly improper act. Then, the plaintiff must show that the defendant's act violated the well-settled law. See Swint v. City of Wadley, 51 F.3d 988, 995 (11th Cir. 1995) (quoting Sammons v. Taylor, 967 F.2d 1533, 1539 (11th Cir. 1992)). Because no question has been raised concerning whether the individual defendants acted within their official discretion in arresting and in searching the plaintiff, the qualified immunity analysis depends upon whether plaintiff has established that the two individual defendants violated the clearly established law, as it would have been understood by a reasonable government actor at the time. See Swint, 51 F.3d at 995. That inquiry into the state of the clearly established law is a focused one, turning, in part, upon an examination of the precise right which was allegedly violated. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing

13

violates that right." Anderson v. Creighton, 483 U.S. 635, (1987). However, as the Supreme Court has made clear, "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent." See id. (citation omitted).

In the summer of 1997, the law was clearly established that an arrest warrant, such as was issued for plaintiff, must be based upon probable cause; indeed, the Bill of Rights demands as much. See U.S. Const. amend. IV ("[N]o Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."). See also Von Stein v. Brescher, 904 F.2d 572, 579 (11th Cir. 1990) (stating that an arrest without probable cause violates the Fourth Amendment). Plaintiff argues that no probable cause existed to support the warrant issued for his arrest and that Agent Adams, who supplied the complaint which resulted in the issuance of the warrant, was clearly and acutely aware of the lack of probable cause. Truly, qualified immunity will not protect a law enforcement officer who knowingly makes false statements essential to the existence of probable cause or

who provides, in support of an arrest warrant, a complaint or an affidavit otherwise so devoid of evidence of any probable cause as to be unbelievable. See Malley v. Briggs, 475 U.S. 335, 344-45 (1986); Jones v. Cannon, 174 F.3d 1271, 1284-85 (11th Cir. 1999). However, a qualified immunity defense is still available even in the absence of a warrant properly supported by probable cause where the arresting officer had at least arguable probable cause for making the arrest such that "reasonable officers in the same circumstances and possessing the same knowledge as the [arresting officers] could have believed that probable cause existed . . . ." Von Stein, 904 F.2d at 579 (11th Cir. 1990).

    Here, the Court need not rely on whether "arguable" probably cause existed, though, because it finds that the arrest warrant issued for plaintiff was valid and was based on probable cause. The photographic identification of the plaintiff, by the agent who actually made the buy, as one of the individuals who had just sold him one hundred dollars' worth of crack cocaine, although not 100% certain, was sufficient, by itself, to find probable cause for issuing the warrant. Probable cause requires more than simple suspicion but does not require absolute certainty or even proof beyond a reasonable doubt. See Brinegar v. United States, 338 U.S. 160, 175-76 (1949) (defining probable cause). The other

evidence as a whole, including Watson's affidavit, in which he declares that he identified Gary Garth rather than plaintiff as the second drug seller, taken in the light most favorable to the plaintiff, does not defeat the existence of probable cause but establishes, at best, that the ABI agents involved in the sting operation were merely confused as to the identities of Garth and plaintiff or as to the informant's identification.  The facts here are such that a reasonably cautious officer, acting with the knowledge available to the defendants, could have concluded that plaintiff had probably committed the crime alleged.  See id.  See also Henry v. United States, 361 U.S. 98, 102 (1959) (defining probable cause).  At the very least, arguable probable cause existed for plaintiff's arrest.  See Von Stein, 904 F.2d at 579 (11th Cir. 1990).

Having concluded that plaintiff's arrest was lawful, his section 1983 claim based upon his post-arrest search is easily resolved.  A search incident to a lawful arrest is without question constitutional.  See United States v. Robinson, 414 U.S. 218, 227-37 (1973).  Because plaintiff's arrest was legal and because his subsequent search was legal, and no reasonable officer at the time of the seizure and search would have thought otherwise based upon the controlling law, both defendants are

16

entitled to summary judgment as to the plaintiff's two section 1983 claims.

**2. State Law Claims**

In addition to his section 1983 claims, the plaintiff has also raised several solely state law tort claims, including allegations of false imprisonment, invasion of privacy, and intentional infliction of emotional distress. (See Compl. ¶¶ 23, 28, 34-35.) Although this Court ordinarily would not have any jurisdiction over those state claims because of a lack of complete diversity, those claims are so related to the plaintiff's federal civil rights claims, over which the Court has original jurisdiction, "that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a) (1994). Under section 1367, this Court could, therefore, elect to exercise supplemental jurisdiction over the pendant state law claims. See id. But, this Court may also decline supplemental jurisdiction over those pendant claims when, as in the present case, it "has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3) (1984). In the interest of judicial economy, however, the Court elects the former alternative, and will exercise supplemental jurisdiction over the plaintiff's state law claims.

17

Given the Court's findings on the plaintiff's federal claims and the relevant, undisputed facts earlier recited in Section III of this opinion, the defendants are unquestionably entitled to prevail as to all of plaintiff's state law claims. Even were the defendants not entitled to state law immunity, which they likely are under section 6-5-338(a) of the Alabama Code, the plaintiff has failed to raise any genuine issues of material fact that would prevent an entry of judgment as a matter of law in favor of Agent Adams and Agent Baker. The plaintiff's false arrest and intentional infliction of emotional distress claims must fail as the plaintiff's arrest and his post-detention search were both clearly valid, and the invasion of privacy claims must also fail as the evidence of record does not establish that any of the actions of the two agents in conducting their investigation or following the arrest even came close to constituting any actionable violations of the plaintiff's privacy rights. To summarize, the plaintiff's state law claims are without merit, and summary judgment is due the defendants.

In conclusion, the Court finds that no material issues of fact remain and that defendants Dale Adams and Sam Baker are entitled to judgment as a matter of law as to all section 1983 claims asserted by plaintiff. Furthermore, the Court finds

summary judgment in favor of defendants proper as to the plaintiff's remaining state law claims. A separate order in accordance with this opinion will be entered.

DONE this 6th day of April, 2000.

/s/ James H. Hancock
SENIOR UNITED STATES DISTRICT JUDGE